IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 2:22-cv-14206 – Civil (Cannon)

| | |
|---|---|
| SASB CORPORATION d/b/a OKEECHOBEE DISCOUNT DRUG, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| MEDICAL SECURITY CARD COMPANY, LLC, | ) ) ) |
| Defendant. | ) |

**PLAINTIFF'S MEMORANDUM OF LAW
IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff, SASB Corporation d/b/a Okeechobee Discount Drug, submits the follow Memorandum of Law in Response to Defendant Medical Security Card Company, LLC's Motion to Dismiss:

I.  **Introduction.**

Plaintiff alleges Defendant sent Plaintiff an unsolicited fax promoting its "ScriptSave" drug discount service in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(C). Dkt. No. 1 (Complaint, ¶¶ 1-6, Ex. A). Defendant has indiscriminately broadcast similar form faxes promoting its "ScriptSave" service to thousands of pharmacies all over the country for many years. *Id.*, ¶ 31; *Mich. Urgent Care & Primary Care Physicians, P.C. v. Medical Sec. Card Co., LLC*, No. 2:20-CV-10353-TGB, 2020 WL 7042945 (E.D. Mich. Nov. 30, 2020).

The TCPA defines fax "advertisement" as "any material advertising the commercial quality or availability of any property, goods, or services." 47 U.S.C. § 227(a)(5). Defendant argues its ScriptSave fax was not an advertisement because it was supposedly not "commercial," but Defendant's argument is baseless.

Defendant is in the business of negotiating discounts on bulk purchases of drugs. Complaint, ¶ 22. Defendant earns "referral fee" "compensation" as a cut of its discounts on each prescription filled using its ScriptSave service. *Id.* Defendant encourages pharmacies, like Plaintiff, to offer their customers "take-one" ScriptSave discount cards by touting the benefits to the participating pharmacy. *Id.*, ¶ 22, Ex. A. Defendant claims that pharmacies that give their customers ScriptSave discount cards will increase their drug sales by enabling customers who could not otherwise afford to fill their prescriptions to do so, and they will also increase their non-drug sales by increasing foot-traffic in their stores. *Id.*

Defendant is in the business of profiting from each use of its ScriptSave program, and Defendant sent a fax to Plaintiff both to make Plaintiff aware of the "availability" and "quality" of Defendant's service and to promote its use by Plaintiff and Plaintiff's customers for Defendant's monetary profit. *Id.*, ¶¶ 4, 22. Ex. A. Thus, Plaintiff's Complaint adequately alleges Defendant's fax was "commercial" and an "advertisement" as defined by the TCPA, so Defendant's motion to dismiss should be denied.

II. **Statement of Facts.**

Plaintiff is a pharmacy in Okeechobee. Dkt. No. 1 (Complaint, ¶ 10). Defendant is an Arizona company in the business of operating a service it calls, "ScriptSave."

2

Complaint, ¶¶ 11, 22.

      **A.**    **Defendant negotiates discounts for the bulk purchase of drugs and earns "referral fees" from pharmacies by taking a cut of those discounts when patients use Defendant's ScriptSave discount cards to purchase drugs from participating pharmacies.**

Defendant's ScriptSave service seeks "compensation" from pharmacies by offering consumers discounts on the purchase of drugs at those pharmacies. *Id.*, ¶ 22. Defendant encourages pharmacies to request ScriptSave "take-one" cards or fliers to give to the pharmacy's customers to use when purchasing drugs. *Id.* Whenever a customer uses Defendant's ScriptSave card at a pharmacy to buy a particular drug, the pharmacy pays a "referral fee" to Defendant in the form of a portion of the discount that Defendant has negotiated for the bulk purchase of that same drug. *Id.* Defendant encourages pharmacies to distribute its "take-one" cards by noting they will enable uninsured customers who might not otherwise be able to purchase the drugs to do so, and they encourage additional foot traffic in the pharmacy that can increase that pharmacy's non-drug sales. *Id.*

      **B.**    **Defendant sent a fax promoting its ScriptSave program to Plaintiff's fax machine without Plaintiff's prior express invitation or permission.**

On June 8, 2018, Defendant sent Plaintiff a fax promoting its ScriptSave service. Complaint, ¶ 16, Ex. A. The fax purported to be "From Pharmacy Contracting," but Plaintiff has never had any contract with Defendant. Complaint, ¶ 20. The fax prominently featured Defendant's "ScriptSave" registered trademark twice. Complaint, ¶ 19Ex. A.

Defendant's fax described Defendant as, "A trusted Pharmacy Partner for Cash Programs for Over 20 Years." Complaint, ¶ 18, Ex. A. Using simple illustrations, the fax described a three-step process allowing a pharmacy customer: (1) to print or copy a ScriptSave "Discount" card; (2) to seek to purchase drugs from a pharmacy; and (3) to receive a discount on purchasing those drugs by using the card. Complaint, Ex. A. The "card" featured on the fax was styled like a consumer's health insurance card containing the following codes, "RxBIN: 006053, RxPCN: MSC, ID#: FX0030052018, Group #: 977." *Id.* But the card also stated, "DISCOUNT ONLY – NOT INSURANCE" on its bottom. *Id.* The bottom of the card also listed a "Pharmacy Help Desk" phone number and a "Customer Care" phone number. *Id.*

The lower third of Defendant's fax contained the following promotional text, "No Insurance? High Co-pay? High Out-of-Pocket Costs?" above the following bullet points, "Cash Program … Low Admin Fees … Pharmacy Friendly … Abandoned Prescriptions … High Insurance Co-pays … No Insurance." *Id.*  The bottom of the fax also stated, "To request patient take-one cards or fliers, visit … www.wellrx.com/physicians-and-employers." *Id.*

The listed website stated, "pharmacies would benefit if they give their customers Defendant's take-one discount cards because they will, "Help patients to stay compliant with their prescription medication regimen." Complaint, ¶ 21, Ex. A. Defendant's website also stated:

> When you use the drug card to fill your prescriptions, the pharmacy compensates the discount program. In some regards, it can be thought of as a referral fee, paid by the pharmacy to the discount program. Pharmacies not only benefit from the additional items that customers usually purchase when

4

>   visiting the store but, in addition, many of the patients using a cash savings card are uninsured and would otherwise not be filling their prescription. <u>Without the Rx savings program, these potential customer visits to the pharmacy would have been abandoned before they happened, resulting in the loss of both the prescription and the foot-traffic through the store</u>.

Complaint, ¶ 22 (emphasis added).

Defendant did not obtain Plaintiff's prior express invitation or permission to send Plaintiff the ScriptSave fax. Complaint, ¶ 24. And Plaintiff did not have an "established business relationship" with Defendant. *Id.*, ¶ 25.

### III. Argument.

Defendant argues Plaintiff has failed to plausibly allege that its fax was an "advertisement," so Plaintiff's Complaint should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 14 (Mem., p. 1). The TCPA defines a fax "advertisement" as "any material advertising the commercial availability or quality of any products, goods, or services." 47 U.S.C. § 227(a)(5).

Defendant argues its fax promoting Plaintiff's use of Defendant's "ScriptSave" drug discount service was merely "informational" offering only "free" services, so it was not "commercial" and not an advertisement under the TCPA. Defendant's argument fails because it ignores the facts to the contrary alleged in Plaintiff's Compliant.

Plaintiff's Complaint alleges: (1) Defendant "negotiate[s] discounts on bulk drug purchases with pharmacy owners;" (2) "Consumers can then access lower medication prices at nearby pharmacies by using a free card or mobile app provided by" Defendant's ScriptSave service; (3) when a consumer uses the ScriptSave card to

fill a prescription, "the pharmacy compensates" Defendant in a way that can be "thought of as a referral fee, paid by the pharmacy to" Defendant; and (4) participating "[p]harmacies not only benefit from the additional items that customers usually purchase when visiting the store but, in addition, many of the patients using a cash savings card are uninsured and would otherwise not be filling their prescription." Complaint, ¶ 22.

Defendant's fax encouraged Plaintiff to give its customers ScriptSave cards, which if used would cause Plaintiff to "compensate" Defendant in a way that Defendant describes as a "referral fee." Defendant's ScriptSave fax was "commercial" because the services it promoted were not, contrary to Defendant's false assertions, free. Complaint, ¶ 22, Ex. A. Defendant's ScriptSave fax encouraged Plaintiff to distribute the discount cards to customers, so that Defendant would earn a cut of each prescription Plaintiff sold by claiming that, in return, Plaintiff could expect more business. *Id.*

Defendant has previously been sued in a class action for sending a nearly identical fax promoting the same ScriptSave service to pharmacies in violation of the TCPA. *Mich. Urgent Care*, 2020 WL 7042945.[1] Defendant moved to dismiss in *Michigan Urgent Care*, but the court rejected Defendant's motion holding that Defendant's ScriptSave fax was an "advertisement":

---

[1]   *Michigan Urgent Care* was resolved by a class action settlement covering claims arising from 23,964 fax transmissions by Defendant. Complaint, ¶ 31. Plaintiff was not a member of the settlement class in *Michigan Urgent Care*, and Plaintiff seeks a class in this action that excludes the members of the *Michigan Urgent Care* settlement class. *Id.*

6

> While the Complaint does not fully describe Defendant's business model, at this stage we must take Plaintiff's allegations as true. The exact nature of what is being "bought and sold" and by whom is not clear at this stage, but Plaintiff has alleged sufficient facts to indicate that some money is changing hands and that the prescription savings cards being promoted have an impact on how much money that will be. More granular details are properly a question for discovery.
>
> For purposes of making a plausible claim that may withstand a motion to dismiss, it is clear from the allegations in the Complaint that the program being promoted is not a welfare program, nor is it one being run by a charity, non-profit, or philanthropic entity. Defendant is alleged to be a for-profit limited liability corporation, and according to its website there is something being bought and sold here: access to negotiated rates on discount drugs, and access to more consumers and their overall purchasing power. *See generally How Do Prescription Discount Cards Work?*, ScriptSave WellRX, https://perma.cc/DFG5-HB6Y.

2020 WL 7042945, at *2-*3.

Similarly, a recent opinion in this district denied a motion to dismiss a TCPA fax claim where the language used in the fax showed the sender was using it to "attract new customers." *Kawa Orthodontics LLP v. Lab. Corp. of Am. Holdings*, Case No. 19-80521-CV-MIDDLEBROOKS, 2019 WL 7371821, *2 (S.D. Fla. Oct. 30, 2019). The defendant had recently become the "exclusive independent laboratory provider" for a health insurance network. *Id.* at *1. It sent a fax announcing this to the plaintiff, a healthcare provider. The fax not only announced the defendant's new status but also touted the quality of the defendant's laboratory services. *Id.* at 3. The court held that because the fax used favorable language to describe the quality of the defendant's services the fax "could plausibly lead medical providers to refer [Defendant's] services to other patients not covered by" the network announced in the fax. *Id.* The court held that the complaint plausibly alleged the fax was "made for the purpose of promoting

7

sales," and so stated a TCPA claim. *Id.* As in *Michigan Urgent Care* and *Kawa Orthodontics*, Plaintiff's Complaint adequately alleges Defendant's ScriptSave fax was an "advertisement" as defined by the TCPA.

Defendant relies primarily on *Sandusky Wellness center, LLC v. Medco Health Solutions, Inc.*, 788 F.3d 218, 221 (6th Cir. 2015), but *Michigan Urgent Care* explained why *Sandusky* does not apply to Defendant's ScriptSave fax:

> The buying and selling is facilitated through patients' use of the discount card program; by extension, it is also facilitated by a doctor's choice to provide a patient with information about these cards. This is the key difference between the fax in *Sandusky* and Defendant's fax: the promotion in *Sandusky* was not trying to "attract clients or customers," but here, it is. As this Court discussed in *Lyngaas* [*v. J. Reckner Associates, Inc.*], a fax that "calls to the attention of the public" a service for which money will change hands can be a type of advertisement. [No. 2:17-CV-12867,] 2018 WL 3634309, at *3 [E.D. Mich. July 31, 2018)]. Defendant's fax is trying to cause doctors to recommend a service to their patients (even if that service comes at no cost to the doctors or the patients) which, if the patients use it, will financially benefit Defendant. This service, unlike in *Sandusky*, is not one that patients have already signed up for through their health insurance provider. [Defendant's] discount card program is something that patients would have to actively make the choice to use.

*Id.*, at *3.

In fact, Defendant admits that the fax sent by the pharmacy benefit manager in *Sandusky* "did not solicit business" from the targeted healthcare provider and did not "promote the benefits of becoming a member" of the defendant's network. Mem., p. 5 (citing *Sandusky*, 788 F.3d at 222-223). In contrast, Defendant's fax both solicited business from Plaintiff and sought to promote the benefits to Plaintiff of using Defendant's services. Complaint, ¶ 22, Ex. A.

8

Defendant cites several other cases that, like *Sandusky*, do not support its argument. Mem, pp. 5-6 (citing *N.B. Indus., Inc v. Wells Fargo & Co.*, 465 F. App'x 640, 642 (9th Cir. 2012) (fax soliciting applications for a non-profit's business leadership award); *Ameriguard, Inc. v. Univ. of Kansas Research Inst., Inc.*, 222 F. App'x 530, 531 (8th Cir. 2007) (fax soliciting participation in a clinical trial by a public university testing a new diabetes treatment); *ARcare v. IMS Health, Inc.*, No. 2:16CV00080, 2016 WL 4967810, at *3 (E.D. Ark. Sept. 15, 2016) (fax seeking verification of recipient's fax number for use in communicating patient healthcare information); *Physicians Healthsource, Inc v. Janssen Pharms., Inc.*. Civil Action No. 12-2132 (FLW), 2013 WL 486207 ((D.N.J. Feb. 6, 2013) (fax sent to doctors advising them that a prescription medicine will now be reimbursed at a different rate by a certain health insurance plan); *Physicians Healthsource, Inc. v. MultiPlan Servs. Corp.*, No. 12-11693, 2013 WL 5299134, at *2 (D. Mass. Sept. 18, 2013) (fax from an insurance network to a physician who was a member of the network alerting him to a population of patients in the network); *Phillips Randolph Enters., LLC v. Adler-Wiener Research Chicago, Inc.*, 526 F. Supp. 2d 851, 853 (N.D. Ill. 2007) (fax inviting participation in research discussion); *Lutz Appellate Servs., Inc. v. Curry*, 859 F. Supp. 180, 181 (E.D. Pa. 1994) (fax announcing job openings). In contrast to Defendant's fax in this case, none of the faxes at issue the cases cited by Defendant sought to encourage the recipients to use the sender's services, so the sender of the fax would receive compensation from the recipient every time those services were used. Complaint, ¶ 22.

9

Defendant argues Plaintiff's allegations are conclusory, but they are not. Mem., p. 7. Defendant's fax provided instructions on how to use its ScriptSave service and noted it was "Pharmacy Friendly" with "Low Admin Fees." Complaint, Ex. A. The fax also stated that using the service would reduce "Abandoned Prescriptions" by encouraging customers with "High Insurance Co-pays" and "No Insurance" to fill their prescriptions at Plaintiff's pharmacy. Complaint, Ex. A. Thus, Defendant's fax touted both the "availability" and "quality" of Defendant's ScriptSave service. 47 U.S.C. § 227(a)(5). Further, Plaintiff alleges that by using Defendant's service Plaintiff will "compensate" Defendant in the form of a "referral fee" that is a portion of the discount that Defendant has negotiated for the bulk purchase of drugs. Complaint, ¶ 22. These facts describe a "commercial" transaction with consideration flowing from Plaintiff to Defendant and vice versa. 47 U.S.C. § 227(a)(5). These are not "conclusory" allegations, but allegations of specific facts showing Plaintiff has stated a claim for violation of the TCPA as in *Michigan Urgent Care* and *Kawa Orthodontics*.

### IV. Conclusion.

For the foregoing reasons, the Court should deny Defendant's motion to dismiss.

Respectfully submitted,

SASB CORPORATION d/b/a OKEECHOBEE DISCOUNT DRUG, individually and as the representative of a class of similarly-situated persons,

By: /s/ Phillip A. Bock
      One of their attorneys

Phillip A. Bock (FL 93895)
BOCK HATCH & OPPENHEIM, LLC
820 W. 41st St., Suite 300
Miami Beach, FL 33140
Telephone: 305-239-8726
Email: service@classlawyers.com

<u>Certificate of Service</u>

  I hereby certify that on this 10th day of August 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send Notice of Electronic Filing to the following counsel of record:

Zachary Foster, Esq.
zachary.foster@quarles.com
101 East Kennedy Boulevard, Suite 3400
Tampa, FL 33602

*Attorney for Defendant*

                  /s/ *Phillip A. Bock*
                  Attorney for Plaintiff