# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### Case No. 2:22-cv-14206-RMM

S.A.S.B. CORPORATION d/b/a
OKEECHOBEE DISCOUNT DRUG,
individually and as the representative
of a class of similarly-situated persons,

     Plaintiff,

  v.

MEDICAL SECURITY CARD
COMPANY, LLC,

     Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

## PLAINTIFF'S MEMORANDUM IN SUPPORT
## OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff, S.A.S.B. Corporation d/b/a Okeechobee Discount Drug ("Plaintiff"), on behalf of itself and the settlement class of similarly-situated persons (the "Settlement Class"), pursuant to Fed. R. Civ. P. 23(e)(2), respectfully requests that the Court find the parties' proposed class-action settlement to be fair, reasonable, and adequate and enter an order certifying the Settlement Class for purposes of judgment, approving the settlement, awarding the requested fees and expenses to Class Counsel, and otherwise resolving this matter. The parties' proposed Final Approval Order is attached as Exhibit A and it will be filed and served by e-mail as required by the Court's CM/ECF Administrative Procedures.

## INTRODUCTION

The parties negotiated a class-action settlement proposal through experienced counsel, at arm's length, and with the assistance of Rodney Max, a professional mediator. On September 8, 2023, Plaintiff filed an Unopposed Motion for Preliminary Approval of Class Action Settlement and Order Directing Notice to the Settlement Class, attaching the Settlement Agreement and its exhibits. Doc. 104. On September 19, 2023, the Court entered an order preliminarily approving the settlement and ordering notice to the Settlement Class. Doc. 107 (the "Preliminary Approval Order").

As required by the Preliminary Approval Order, the Settlement Administrator (a company named Class-Settlement.com") sent notice to the Settlement Class by U.S. Mail and by fax. Exhibit B (Declaration of Dorothy Sue Merryman). In response, class members submitted claims for 14,741 (31%) of the 47,952 different fax numbers to which the Settlement Faxes were sent, and corresponding to 66,850 (31%) of the 217,458 total fax transmissions at issue.[1] *Id.* No class member has objected to the settlement. *Id.* Class members submitted just 6 requests for exclusion. *Id.* The Settlement Administrator also sent the required CAFA notice to the U.S. attorney and each of the 50 state attorneys general, too, and none of them has filed any objection to the settlement. *Id.* Because the settlement is fair, reasonable, and adequate, the parties respectfully request that the Court grant final approval.

---

[1]     The claims submission deadline was December 1, 2023. As of the writing of this brief, the Settlement Administrator is still receiving mailed claims postmarked by that date and finalizing review of all claims received.

I.      **Background and summary of settlement.**

Plaintiff's Class Action Complaint alleged that defendant Medical Security Card Company, LLC ("Defendant") violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), by sending unsolicited advertisements by facsimile to Plaintiff and others. Discovery showed that Defendant successfully sent 217,458 faxes to 47,952 unique fax numbers between June 8, 2018, and June 29, 2022 (the "Class Period").

As discussed in the preliminary approval brief (Doc. 104-1, pp. 5-7), Defendant identified and discovery revealed several issues presenting risk to the class at class certification, on the merits, or both. First, Defendant has argued that its faxes were not "advertisements" for purposes of the TCPA. The Eleventh Circuit and other appellate courts have held that some faxes do not satisfy the TCPA's definition of "advertisement" and, therefore, they are unactionable. *See, e.g., Florence Endocrine Clinic, PLLC v. Arriva Med., LLC*, 858 F.3d 1362 (11th Cir. 2017); *Robert W. Mauthe, M.D., P.C. v. Optum, Inc.*, 925 F.3d 129 (3d Cir. 2019); *Robert W. Mauthe, M.D., P.C. v. Nat'l Imaging Assocs., Inc.*, 767 F. App'x 246 (3d Cir. 2019); *Sandusky Wellness Center, LLC v. Medco Health Sols., Inc.*, 788 F.3d 218 (6th Cir. 2015); *Ambassador Animal Hospital, Ltd. v. Elanco Health Inc.*, 74 F.4th 829 (7th Cir. 2023). Although Plaintiff was successful in defeating Defendant's motion to dismiss, Defendant likely would have raised the issue again, either later in the case or on appeal.

Second, and perhaps more significantly, the fax recipients are pharmacies with which Defendant had written contracts. Defendant refers to them as "contracted

pharmacies." DE 85. The contracts are silent regarding express permission to send advertising material by fax, but there is a risk that the Court would hold that the contracts sufficiently provided Defendant permission to send the faxes at issue to the contracted pharmacies. *See Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1101 (11th Cir. 2019) (franchise agreement included consent to receive fax advertisements); *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615 (3d Cir. 2020) (provision of a fax number can evidence consent to receive advertising faxes relating to the purpose of the provision of the number).

Moreover, some courts have refused to certify contested classes in TCPA cases involving faxes sent to persons with whom the advertiser had established business relationships, as opposed to strangers, finding that individual issues of consent predominated. *See, e.g., Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*, 29 F.4th 839 (7th Cir. 2022); *Brodsky v. HumanaDental Ins., Co.*, 910 F.3d 285 (7th Cir. 2018); *Sandusky Wellness Center, LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468-69 (6th Cir. 2017); *Gene & Gene LLC v. Biopay LLC*, 541 F.3d 318 (5th Cir. 2008).

Finally, Defendant argued that any faxes received through an online service provider were not received on a "telephone facsimile machine." *See Urgent One Med. Care, PC v. Co-Options, Inc.*, No. 21-CV-4180, 2022 WL 4596754, at *7 (E.D.N.Y. Sept. 30, 2022) (citing cases but denying motion to dismiss and strike class allegations); *see also In the Matter of Amerifactors Fin. Grp., LLC Petition for Expedited Declaratory Ruling*, CG Docket Nos. 02-278, 05-338, 30 FCC Rcd 8598, 2015 FCC LEXIS 2427 (Dec. 9, 2019); *In the Matter of Joseph T. Ryerson & Son, Inc. Petition for Declaratory*

*Ruling*, CG Docket Nos. 02-278, 05-338, 2020 FCC LEXIS 3385 (Sept. 4, 2020). Plaintiff is further mindful of the rulings by two U.S. District Courts concluding that persons who received faxes through an online fax service lacked Article III standing to bring TCPA claims in federal court. *See, e.g., Daisy, Inc. v. Mobile Mini, Inc.*, 489 F. Supp. 3d 1287 (M.D. Fla. 2020); *Scoma Chiropractic, P.A. v. Dental Equities, LLC*, Case No. 16-cv-41, 2021 WL 6105590 (M.D. Fla. Dec. 23, 2021). Such persons or entities are expressly excluded from the Settlement Class.

Armed with information acquired through the adversarial process and understanding the potential strengths and weaknesses of their respective positions, the parties engaged in arm's-length negotiations, beginning with a full-day, in-person mediation with Rodney Max in the Miami office of Upchurch, Watson, White & Max.

The parties ultimately reached agreement and Defendant agreed to make the Settlement Fund ($9,487,050) available to resolve the controversy about faxes sent to the Settlement Class between June 8, 2018, through June 29, 2022. The key terms are as follows:

 a. <u>Certification of a Settlement Class</u>. The Parties stipulated to certification of, and the Court preliminarily certified, a "Settlement Class" defined as:

> All persons and entities who were sent faxes: (1) between June 8, 2018 and June 29, 2022; (2) by or on behalf of Medical Security Card Company, LLC; (3) promoting the commercial availability or quality of its property, goods, or services; and (4) which did not contain an opt out notice as described in 47 U.S.C. § 227; but excluding all persons and entities who received faxes through an online fax service provider.

The Settlement Class also excludes (1) MSCC, including its parent, subsidiary, and affiliated corporations, and their attorneys, officers, directors, agents, servants, and employees, and the immediate family members of such persons; (2) the named counsel in the Action and the employees of their offices or firms; and (3) the judge(s) assigned to the Action and their staff. Doc. 107 at ¶ 2.

b.      <u>The Class Representative and Class Counsel</u>. The parties agreed, and the Court preliminarily appointed Plaintiff as the Class Representative and Plaintiff's attorneys (Phillip A. Bock and Bock Hatch & Oppenheim, LLC) as Class Counsel. *Id.* at ¶ 4.

c.      <u>The Settlement Fund</u>. Defendant agreed to make $9,487,050 (the "Settlement Fund") available to pay class member claims, to pay attorney's fees and out-of-pocket expenses to Class Counsel, and to pay the costs of administering the settlement. Agreement, Doc. 104-2 ¶ 6. If claimants do not cash their settlement checks prior to expiration, the money from those checks would be paid as *cy pres* to Florida Rural Legal Services, Inc. *Id.*, ¶ 16.

d.      <u>Monetary Relief to the Settlement Class</u>. Each class member who submits an approved claim form will be mailed a check for $50 for each of the faxes at issue successfully sent to their fax number(s). *Id.*, ¶¶ 14, 15. A successful claimant need not possess any copies of faxes received, need not remember receiving any faxes, and need not know anything about Defendant. Rather, the claimant must merely identify himself/herself/itself as a member of the Settlement Class; *i.e.*, as the owner or user of one or more targeted fax

numbers during the Class Period and confirm that the class member was not using an online fax service provider. *Id.* and Exhibit 2 thereto.

       e.    <u>Class Notice</u>. The Settlement Class was notified about the settlement proposal by facsimile and U.S. Mail. <u>Exhibit B</u>. The notice included instructions about submitting a claim to the Settlement Administrator by fax, mail, or electronically, and about opting out or objecting to the settlement, and includes a direct dial telephone number to call Class Counsel with questions. <u>Exhibit B</u>, Ex. 2. The notice also informed the Settlement Class about Class Counsel's requests for fees and expenses and provided access to the Settlement Website, where class members could find other relevant documents and information and where they could submit a claim form electronically. *Id.*

       f.    <u>Rights to Opt Out or Object</u>. Class members were notified about their rights and options, including their right to object to the settlement or to exclude themselves from it by December 1, 2023. *Id.* No class member objected. *Id.* Exclusion requests were submitted for just 6 of the subject fax numbers. *Id.*

       g.    <u>Release</u>. The Settlement Class will release all claims that were brought or could have been brought in this action about Defendant's advertisements sent by fax during the Class Period (June 8, 2018, through June 29, 2022). *Id.*, ¶ 22.

       h.    <u>Attorney's Fees and Costs and Class Representative Award</u>. Class Counsel have requested that the Court approve and award attorney's fees equal to 25% ($2,371,362.50) of the Settlement Fund, plus reasonable out-of-

pocket expenses. Those expenses totaled $19,044.94 as of the time of preliminary approval. Doc. 104-4. In addition, Class Counsel request reimbursement of some travel expenses that will be incurred in connection with attending the final approval hearing.

## II.   The Settlement Class was notified about the terms of the proposal.

Rule 23(e)(1) requires, "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Notice of the settlement must satisfy due process. *Maher v. Zapata Corp.*, 714 F. 2d 436, 450-453 (5th Cir. 1983); *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F. 2d 956, 963 (3d Cir. 1983). The Court is vested with wide discretion both as to the manner and form of notice. 7B Charles Alan Wright, *et al.*, FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2005). *See also* Rule 23(c)(2)(B) ("The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means"). Here, as ordered by the Court, the Settlement Administrator sent the class notice both by fax and mail. Exhibit B, Merryman Dec., ¶¶ 9-12. Notice by fax and mail was both appropriate and a "reasonable manner" of settlement notice. *See Juris v. Inamed Corp.*, 685 F.3d 1294, 1307 n.10 (11th Cir. 2012), *citing* Fed. R. Civ. Proc. 23(e).

Defendant's fax broadcaster, Consensus Cloud Solutions, produced transmission logs and other records identifying the fax numbers to which each of the faxes at issue was successfully sent. Using those documents and other resources, including reverse lookups and the National Change of Address Database, the Settlement Administrator found mailing addresses associated with the various fax recipients. Ex. B, ¶¶ 8, 11. Then, the notice was sent to the Settlement Class by both

fax and mail. *Id.* Sending the notice in these ways satisfied due process and was reasonable, as Rule 23(e) requires.

The content of the parties' notice complied with Rule 23(c)(2)(B), which requires that the notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." The class notice stated each of these things. Exhibit B, Ex. 1.

Further, the claim form for this settlement was a 1-page, easy to read and understand form. *Id.* Each Settlement Class member merely had to provide their contact information, verify ownership or use of the subject fax number during the class period, and verify that fax service was not provided by an online fax service provider. *Id.* The Settlement Class members did not have to provide a copy of any faxes they received or attest to remembering receipt of any faxes.

## ARGUMENT

I.    **The Court should finally approve the Settlement.**

A.    **Standard for judicial evaluation and approval.**

A court can approve a class settlement that "is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C); *Ponzio v. Pinon*, -- F.4th --, 2023 WL 8183241, *3 (11th Cir. Nov. 23, 2023); *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) ("*Bennett*").

### B. Factors for determining whether a settlement is fair, reasonable, and adequate.

Courts consider the following factors in evaluating a class action settlement: (1) the risk of fraud or collusion in arriving at the settlement; (2) the likelihood of success at trial; (3) the range of possible recovery; (4) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (5) the complexity, expense and duration of litigation; (6) the substance and amount of opposition to the settlement; and (7) the stage of proceedings at which the settlement was achieved. *See Bennett*, 737 F.2d at 986.

Federal Rule 23(e)(2) enumerates these factors as follows: (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

The 11th Circuit recently held that "The 2018 amendment to Rule 23(e)(2) is not meant 'to displace' the factors previously identified by courts in reviewing class action settlement agreements, but 'rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to

approve the proposal.'" *Ponzio*, 2023 WL 8183241, *4, *quoting* Fed. R. Civ. Pro 23(e)(2), Advisory Committee's Note to 2018 Amendment.

Here, these factors support approval of the proposed settlement.

### 1.   The risk of fraud or collusion.

"Settlement negotiations that are conducted at arm's length and in good faith demonstrate that a settlement is not the product of collusion." *Retsky Family Ltd. Partnership v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, * 2 (N.D. Ill. Dec. 10, 2001). "[A] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." MANUAL FOR COMPLEX LITIGATION, THIRD, § 30.42 (1995).

Here, the record shows the settlement is not the product of collusion. Settlement was reached after discovery was conducted and with the assistance of a professional mediator. The settlement resulted from arm's-length negotiations between experienced counsel who understood the strengths and weaknesses of their respective positions. It did not result from collusion.

### 2.   Likelihood of success on the merits.

The parties agreed to settle after weighing the risks and benefits of further litigation. The settlement treats members of the class equitably relative to each other. Each class member who did not opt-out of the Settlement Class and who submitted a timely and valid claim form will be mailed a check in the amount of $50 for each of the facsimile transmissions successfully sent to each of their fax numbers, according

11

to the transmission logs obtained from Consensus Cloud Solutions. This is an excellent outcome and result, especially given the posture of the litigation. Settlement Class members can obtain a significant monetary payment while avoiding the costs and risks associated with further litigation. Without the settlement, they might recover substantially less, if anything at all.

As discussed above, if this matter were litigated rather than settled, the class would face risks at class certification and on the merits of the claims. Defendant contends that its faxes are not advertisements under the TCPA and that, even if they were, they were not unsolicited because they were sent only to persons and entities with which Defendant had contracts to participate in the ScriptSave program.

Moreover, even if Plaintiff and the class were ultimately successful in litigation, the Eighth Circuit affirmed a reduction of a large TCPA statutory damages award on due process grounds. *Golan v. FreeEats.com*, 930 F.3d 950 (8th Cir. 2019). Here, the statutory damages potentially range from $108,729,000 to $326,187,000 (if trebled), but there is no guarantee that such a sum would not be reduced even if Plaintiff were successful across the board.

An adequate settlement avoids the risk of defeat and minimizes delay. *See Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) ("the very purpose of the compromise is to avoid the delay and expense of such a trial")*; Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 834 (E.D. Mich. 2008) ("class members would bear the risk that continued litigation will leave them with nothing because of loss and, in some cases, also because of delay"). A member of the Settlement Class should

prefer to receive a payment now, by submitting a claim form identifying himself as the owner or user of a fax number receiving faxes during the Class Period, over the uncertain possibility of a higher payment in the future to be accomplished only through additional effort, risk, and delay. *See Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.,* 497 F.3d 615, 632 (6th Cir. 2007). The settlement avoids the risks of pursuing success on the merits, the certain delays in getting there, and the administrative issues of finding class members years in the future.

> ### 3. The range of possible recovery and the point on which or below the range of recovery is fair.

"The next *Bennett* factors the Court should consider are the range of possible recovery and the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable. These factors are easily combined. The range of possible recovery spans from a finding of non-liability to a varying range of monetary and injunctive relief. In considering the question of a possible recovery, the focus is on the possible recovery at trial. The Court should evaluate the "proposed settlement in its totality." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 693 (S.D. Fla. 2014), appeal dismissed (Oct. 15, 2014) (citations and quotations omitted).

A settlement that provides between 9% and 45% of the possible range of recovery satisfies the *Bennett* range of recovery factors. *Id.*; *In re Checking Account Overdraft Lit.,* 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) (a recovery of between 9% and 45% was an "exemplary result"). Here, the settlement payment of $50 per fax is

10% of the TCPA's statutory damages. And, that is without deducting anything from the potential recovery for attorney's fees. Assuming a successful judgment would involve payment of 25% in fees, claiming class members are receiving 13.3% of the statutory damages they would receive after fees were subtracted ($50/$375). Moreover, Defendant could prevail, and the class would get nothing. The range of possible recovery factors weigh in favor of final approval.

### 4.     The complexity, expense, and likely duration of the litigation.

Class actions have a well-deserved reputation for complexity. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 315 (N.D. Ga. 1993) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). This case is no exception. Further litigation of this case would require a significant commitment of time and financial resources because Plaintiff expects Defendant would continue to contest whether the facsimiles were advertisements under the TCPA and whether they were sent with prior express permission or invitation, and make other arguments against classwide relief. The settlement avoids the uncertainty, length of time and high costs associated with continuing this litigation, by offering relief to the class members by returning a simple claim form identifying themselves as members of the class entitled to claim a monetary share of the fund.

### 5.     The substance and amount of opposition to the settlement.

Here, no class member objected to the settlement, and only 6 (0.001%) opted out. <u>Exhibit B.</u> A low rate of opt-outs or opposition reflects favorably on a settlement. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020-21 (N.D. Ill. 2001) (high acceptance rate "is strong circumstantial evidence in favor of the settlements").

14

Thus, the class members overwhelmingly support the settlement. *See Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. Feb. 2, 2001) (low opt-out and objection statistic showed that approximately 99.99% of the class elected to take part in the settlement); *Schlensky v. Dorsey*, 574 F.2d 131, 148 (3d Cir. 1978); *In re SmithKline Beecham Corp. Sec. Litig.*, 751 F. Supp. 525, 530 (E.D. Pa. 1990); *Hispanics United of DuPage County v. Village of Addison, Illinois*, 988 F. Supp. 1130, 1169 (N.D. Ill. 1997) (settlement fair where only a small number of class members objected); *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 163, 175 (S.D.N.Y. 2000) (a small number of objectors is "indicative of the adequacy of the settlement"); *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 141 (W.D. Ky. 1992) ("small number of objectors is a good indication of the fairness of the settlement").

In contrast, over 30% of the Settlement Class elected to claim the benefits made available. The high participation rate and lack of any opposition shows a favorable reaction to the settlement that supports final approval.

### 6. The stage of proceedings at which the settlement was achieved.

"The stage of the proceedings at which settlement is achieved is evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation. Early settlements are favored. Indeed, vast formal discovery need not be taken." *Saccoccio*, 297 F.R.D. at 694 (citations and quotations omitted). Here, the parties engaged in discovery sufficient to know the relevant facts and issues present, and this knowledge and their experience allowed them to make an informed decision prior to

agreeing to the settlement terms. Therefore, the stage of proceedings and amount of discovery support final approval.

### 7.    Opinion of Class Counsel and Class Representative.

Courts in the Eleventh Circuit give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *In re Checking Account Overdraft Litig.*, 830 F. Supp. at 1351. Here, Plaintiff and its counsel have concluded that the terms and conditions of this Settlement are fair, reasonable, and adequate. Class Counsel have substantial experience litigating class actions and claims about unsolicited faxes. *See* Doc. 104-5. They have been appointed class counsel in dozens of cases. *Id.* Under these circumstances, the Court should give weight to Class Counsel's favorable opinions about this settlement.

## II.    Attorneys' fees and expenses from the Settlement Fund are fair, reasonable, and appropriate.

Under the terms of the Agreement, Class Counsel will be paid 25% of the Settlement Fund ($2,371,362.50) as attorneys' fees, plus their out-of-pocket litigation expenses. Doc. 104-2, ¶ 17. Defendant does not object to Plaintiff's requests for these amounts. *Id.* Class Counsel undertook the case on a contingency basis and made a fund of money available to pay the class. Plaintiff respectfully requests that the Court approve this agreement, to which no one objects.

### A.    The Court should approve Defendant's agreement to pay Class Counsel a percentage of the Settlement Fund as attorney's fees.

It is well settled that the attorneys who create a benefit for class members are entitled to compensation for their services. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The U.S. Supreme Court has noted that in settlement fund cases, such as

this one, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). *See also US Airways, Inc. v. McCutchen*, 133 S.Ct. 1537, 1545 (2013) (discussing *Boeing* and noting that the common fund doctrine is "designed to prevent freeloading").

"This Court has 'recognized consistently' that someone 'who recovers a common fund for the benefit of persons other than himself' is due 'a reasonable attorney's fee from the fund as whole.'" *McCutchen*, 133 S.Ct. at 1550, *quoting Boeing*, 444 U.S. at 478. *See also* ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 13:80 (4th ed. June 2008). "When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund." Moreover, the percentage of the fund method in a common fund settlement is appropriate as it "enhances efficiency" and "it better approximates the workings of the marketplace." *In re Thirteen Appeals Arising Out of the San Juan DuPont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995).

"In the Eleventh Circuit, class counsel is awarded a percentage of the fund generated through a class action settlement." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1358. More specifically, the Eleventh Circuit explicitly stated, "we believe that the percentage of the fund approach is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774

(11th Cir. 1991). The requested fees here are 25% of the Settlement Fund, which is the benchmark rate for class action fees in this Circuit. *Id.*

Indeed, a Task Force Report from a study of common fund fee awards found that the percentage method accomplished the goals of providing "fair and reasonable compensation for attorneys in those matters in which fee awards are provided by federal statute or by the fund-in-court doctrine; to discourage abuses and delays in the fee-setting process; to encourage early settlement or determination of cases; to provide predictability; to carry out the purposes underlying court-awarded compensation; to simplify the process by reducing the burdens it currently imposes on the courts and on litigants; and to arrive at fee awards that are fair and equitable to the parties and that take into account the economic realities of the practice of law." *Id.* at 773 (internal citations omitted).

In *Boeing*, 444 U.S. 472, 480 (1980), the Court stated that the right of absentee class members "to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel." "[T]he criteria are satisfied when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Id.* at 479.

Consequently, the fee award is based upon the entire fund available to be claimed, even if a portion of the fund is not claimed by class members and the unclaimed remainder reverts to the defendant as in the instant settlement. *See Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) ("The

entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not."); *Poertner v. Gillette Co.*, 618 Fed. Appx. 624, 626 (11th Cir. 2015) (same), *citing Camden I Condo. Ass'n*, *supra*, 946 F.2d at 774; *Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1297 (11th Cir. 1999) (same); *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (same); *See also* 4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 14:6, p. 570 (4th ed. 2002).

Here, as in *Boeing*, the class members were sent class notices with an attached claim form that would enable them "to share the harvest of the lawsuit upon proof of their identity." By identifying themselves and stating that they owned/held the fax numbers in question during the class period (and that they did not use an online e-fax service), they would receive their share of the Settlement Fund, without any need to prove up their claim, possess a copy of Defendant's "junk faxes," or remember receiving any faxes from Defendant.

### B.   The requested fees are within the market rate for this type of case.

As discussed, the Settlement Agreement calls for a 25% fee. Doc. 104-2, ¶ 17. That percentage is the benchmark in the Eleventh Circuit. *See Poertner*, 618 Fed. Appx. at 628, *citing Camden I Condo. Ass'n*, 946 F.2d at 775. Moreover, that percentage falls within the market rate for TCPA cases. *See, e.g., Palm Beach Golf Center-Boca, Inc. v. Sarris*, Case No. 12-cv-80178 (S.D. Fla. Sept. 27, 2016) (Doc. 230)

(25% of fund); *Bobo's Drugs, Inc. d/b/a Davis Islands Pharmacy v. Total Pharmacy Supply, Inc.*, Case No. 17-cv-2553 (M.D. Fla. Nov. 4, 2019) (same); *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, No. 18-cv-1902 (E.D. Pa. Apr. 21, 2022) (Doc. 85) (awarding one third of fund); *Robert W. Mauthe, M.D., P.C. v. ITG, Inc.*, No. 18-cv-1968 (E.D. Pa. Dec. 21, 2021) (Doc. 138) (same); *Conner v. Optum360, LLC*, Case No. 17-cv-1642 (E.D. Pa. Nov. 25, 2019) (Doc. 122) (same); *Hawk Valley, Inc. v. Taylor*, Case No. 10-cv-804 (E.D. Pa. Aug. 6, 2015) (Doc. 193) (same); *City Select Auto Sales, Inc. v. BMW Bank of North America, Inc.*, Case No. 13-cv-4595 (D. N.J. Jan. 7, 2020) (Doc. 171) (same); *Community Vocational Schools of Pittsburgh, Inc. v. Mildon Bus Lines, Inc.*, Case No. 09-cv-1572 (W.D. Pa. Oct. 9, 2019) (Doc. 149) (same); *13-50 River Road Corp. v. Ansam Commercial Kitchen and Ventilation Specialists, Inc.*, Case No. 16-cv-710 (D. N.J. July 24, 2019) (same); *Bais Yaakov of Spring Valley v. Peterson's Nelnet, LLC*, Case No. 11 CV 11, 2015 WL 12866997 (D. N.J. Jan. 26, 2015) (same); *Imhoff Investment, LLC v. Sammichaels, Inc.*, Case No. 10-cv-10996 (E.D. Mich. Nov. 2, 2016) (Doc. 120) (same); *American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, Case No. 09-cv-1162 (W.D. Mich. Mar. 1, 2016) (Doc. 278) (same); *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, Case No. 12-cv-2257 (N.D. Ohio Feb. 9, 2016) (Doc. 73) (same); *Van Sweden, Inc. v. 101 VT, Inc.*, Case No. 10-cv-253 (W.D. Mich. July 30, 2015) (Doc. 245) (same); *Jackson's Five Star Catering, Inc. v. Beason*, Case No. 10-CV-10010 (E.D. Mich. Apr. 15, 2015) (Doc. 90) (same); *Sandusky Wellness Center, LLC v. Heel, Inc.*, 12-cv-1470 (N.D. Ohio Apr. 25, 2014) (Doc. 95) (same); *The Savanna Group, Inc. v. Trynex, Inc.*, Case No. 10-CV-7995 (N.D. Ill. Mar.

4, 2014) (Doc. 243) (same); *Sawyer v. Atlas Heating and Sheet Metal Works, Inc.*, Case No. 10-cv-331 (E.D. Wis. July 19, 2013) (Doc. 59) (35% of fund); *Avio Inc. v. Creative Office Solutions, Inc.*, 10-cv-10622 (E.D. Mich. Dec. 10, 2012) (Doc. 31) (one third of fund); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, 08 C 5953 (N.D. Ill. Nov. 1, 2010) (Doc. 146) (same); *Saf-T-Gard International, Inc. v. Seiko Corp. of America*, No. 09 C 0776 (N.D. Ill. Jan. 14, 2011) (Doc. 100) (same).

Attorneys' contingent risk is an important factor in determining the fee award. *See Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992) (collecting cases). The attorneys who create a benefit for class members are entitled to compensation for their services. Class Counsel undertook the case on a contingency basis. Class Counsel have been litigating TCPA claims and claims about fax advertising since 2003. Doc. 104-5. They were able to apply their unique experiences and capabilities to achieve an excellent result in a fair and efficient manner. Throughout the litigation, they faced significant risks of nonpayment.

The class notice informed the Settlement Class about the requested attorneys' fees and expenses, Plaintiff's supporting brief and exhibits were on the Settlement Website, and no class member objected. *See* Exhibit B, Ex. 1. Courts have recognized the lack of objections from members of the class as an important factor in awarding fees. *See, e.g., In re Automotive Refinishing Paint Antitrust Litig.*, MDL Docket No. 1426, 2008 WL 63269, *4 (E.D. Pa. Jan. 3, 2008) ("A lack of objections demonstrates that the Class views the settlement as a success and finds the request for counsel fees to be reasonable.").

In *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), the U.S. Supreme Court held that negotiated, agreed-upon attorneys' fee provisions, such as the one here, are the "ideal" towards which the parties should strive: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." In *Malchman v. Davis*, 761 F.2d 893 (2d Cir. 1985), the court concluded that courts should not interfere in fee arrangements between settling class action parties when the defendant has agreed to pay the fees:

> [W]here, as here, the amount of the fees is important to the party paying them, as well as to the attorney recipient, it seems to the author of this opinion that an agreement 'not to oppose' an application for fees up to a point is essential to completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged. It is difficult to see how this could be left entirely to the court for determination after the settlement. [761 F.2d at 905 n. 5].

In sum, Class Counsel undertook this case on a contingency basis. They have been litigating TCPA class actions since 2003 and have litigated other types of class actions for many more years. In this case, they were able to apply their unique capabilities to achieve an excellent result in a fair and efficient manner. They always faced risks of nonpayment, not only for their time, but also for their out-of-pocket costs. The Court should approve Defendant's agreement to pay Class Counsel attorneys' fees of $2,371,362.50, plus expenses.

## CONCLUSION

Because it is fair, reasonable, and adequate, Plaintiff respectfully requests that the Court grant final approval to the proposed settlement and enter the Final Approval Order.

Dated: December 8, 2023

Respectfully submitted,

S.A.S.B. CORPORATION d/b/a OKEECHOBEE DISCOUNT DRUG, individually and as the representative of a class of similarly-situated persons,

By: /s/ Phillip A. Bock
      One of their attorneys

Phillip A. Bock (Fla. Bar No. 93895)
**BOCK HATCH & OPPENHEIM, LLC**
820 W 41st St., #318
Miami Beach, FL 33140
Phone: 305-239-8726
phil@classlawyers.com
service@classlawyers.com

David M. Oppenheim (*pro hac vice*)
Barry J. Blonien (*pro hac vice*)
**BOCK HATCH & OPPENHEIM, LLC**
203 N. La Salle St., Ste. 2100
Chicago, IL 60601
Phone: 312-658-5525
david@classlawyers.com
barry@classlawyers.com

## CERTIFICATE OF E-FILING AND SERVICE

I hereby certify that, on December 8, 2023, I electronically filed the foregoing using the ECF System, which will send notification of such filing to all counsel of record.

/s/ Phillip A. Bock